### MARTIN et al. v. ADAMS et al.

*(Supreme Court, General Term, First Department.  May 15, 1891.)*

COMPROMISE—VALIDITY—FRAUD.

A firm, having made an assignment for the benefit of their creditors, subsequently agreed with them upon a compromise, by which the creditors accepted, in full of their claims, 55 per cent. thereof, in notes of the partners, with security, and, in addition thereto, A., one of the partners, agreed to pay to the creditors, upon the expiration of a year from the payment of the notes, the profits of any business in which he might be then engaged, not to exceed 10 per cent. of the original claim. Before the compromise was completed, W., a son of A., made a contract with one of the firm creditors, unknown to the others, whereby the interest of such creditor in the additional sum to be paid by A. should, on the completion of the compromise deed, be assigned to him, in consideration whereof he should give his note, secured by separate written guaranty of A. *Held*, that such agreement between W. and such creditor was fraudulent, and the compromise therefore null and void.

Appeal from judgment on report of referee.

Action by Louis F. Martin and others against Eliza J. Adams and others, as executors, etc. There was a judgment for defendants, and plaintiffs appeal.

Argued before VAN BRUNT, P. J., and LAWRENCE and DANIELS, JJ.

*Sutherland Tenney*, for appellants. *Hugh Porter*, for respondents.

DANIELS, J. This action was brought to set aside a composition agreement made with the members of the firm of R. & H. Adams, consisting of Henry Adams and Peter Horne, with their unsecured creditors, because of special advantages alleged to have been extended to particular creditors. They had made a general assignment of their property for the benefit of their creditors; and after that an adjustment or compromise was effected, by which these creditors agreed to accept and receive, in satisfaction of the debts owing them, 55 per cent. thereof in the notes of their debtors, indorsed by Robert Adams, and secured by a mortgage upon property situated at Paterson, in the state of New Jersey, and payable in five equal annual payments, with interest; and the debtor Henry Adams also agreed to pay each of these creditors, at the expiration of one year after the payment of the notes, the net profits or earnings of the business of any firm of which he should then be a member, that the books should show him then entitled to, but not exceeding 10 per cent. of the principal of the respective claims of the creditors, and interest on the 10 per cent. at the rate of 6 per cent. from the date of the mortgage given to secure the 55 per cent. and interest. Before the compromise was completed, and on the 17th of April, 1883, William Adams, who is a son of the debtor Henry Adams, made and entered into a further agreement, unknown to the other creditors, with the Second National Bank of Fall River, in these words and figures:

"This agreement witnesseth that, for value received, I, William Adams, do hereby covenant and agree that, on the completion of a composition deed now proposed by R. & H. Adams with their creditors, or other settlement had, I will purchase the interest of the Second National Bank of Fall River, Mass., which holds note of the said R. & H. Adams for $5,000, due October

17, 1888, in so much and such part of the interest of said creditor in the net profits or earnings of the business as is provided in said composition deed, in addition to the 55 per cent. to be paid; and that I will give therefor my notes, aggregating 10 per cent. of said claim; that is, one note for five per cent. of said claim, payable in one year, and another note for five per cent., payable in two years, dated on the day of the completion of the above-mentioned composition deed or other settlement; and these presents shall bind my heirs, executors, and administrators; and I covenant and agree, and hereby promise, to give my notes as aforesaid, and complete said purchase; and, in the event of my failure to give such notes, I hereby agree to and with each of said creditors to pay them ten per cent. in cash on the amount of their respective claims.

"Witness my hand and seal at the city of New York this 17th day of April, 1883.            [Signed]                    WILLIAM ADAMS.

"In presence of E. W. ORVIS."

And on the same day, and apparently on account of this additional agreement, the bank became a party to the compromise agreement, and after that received the notes mentioned in each of these agreements; and the evidence supports the conclusion that the debtor Henry Adams, at the time of the execution of the agreements, understood that this second instrument was made and delivered by William Adams to the person who, as agent for the bank, acted for it in this business; for he then, with his initials, subscribed or attested the correctness of this instrument:            "APRIL 17, 1883.

"Henry Adams says he will see that the notes given by William Adams, in settlement of the affairs of R. & H. Adams, will be paid at maturity.

"H. A.      C. E. O."

It is not necessary to determine the controverted point, whether this created a legal obligation on the part of Henry Adams, binding him to the payment of the notes; for if the notes given by William Adams secured to the bank a pecuniary advantage, beyond that provided for the other unsecured creditors, that rendered the composition agreement fraudulent, and entitled the plaintiffs to have it set aside. It has been objected that these plaintiffs were not such unsecured creditors. But the fact is clearly otherwise. It was so alleged in the complaint, and the answer of the defendant answering stated them to be such; and the fact that they became parties to the composition agreement supports that statement; and so does the omission to present this objection upon the trial. The question is therefore in the case whether a greater and further advantage was in this manner secured to the Fall River bank than that which was provided for the other creditors; and that there was seems to result from that part of the composition agreement relating to the additional 10 per cent.; for there was no absolute obligation on the part of Henry Adams to pay the 10 per cent.; but, at the most, it was to depend upon the fact that he should become entitled to the amount as the profits or earnings of a business in which he should become a member. If he did not, then there was no obligation whatsoever to pay the 10 per cent., or any part of it. Whether it ever should be payable depended upon two contingencies; and they were that he should afterwards become interested in or connected with a business of some firm, and that he should become entitled to so much of the net profits or earnings of that business. These contingencies were intended to be avoided by the notes of William Adams; and they were avoided in form, at least, when the notes were given, as they were, with the others, for the 55 per cent. That William Adams was not at the time a responsible person does not change the effect of the transaction; for the notes were offered as preferable to the uncertainty of the realization of the 10 per cent., and were so accepted and received. They were regarded as the most valuable, inasmuch as there was a probability that the circumstances of the maker would improve, and their payment could be enforced against him when they should mature and become

due. They gave the creditor receiving them the chances of an advantage not secured to the other unsecured creditors; and that was a fraud upon these other creditors, entitling them to avoid the composition agreement. *Solinger* v. *Earle*, 82 N. Y. 393; *Zoebisch* v. *Von Minden*, 47 Hun, 213; *White* v. *Kuntz*, 107 N. Y. 518, 14 N. E. Rep. 423. The judgment should therefore be reversed, and a new trial ordered, with costs to the plaintiffs to abide the result. All concur.