LOUIS F. MARTIN and Others, Appellants, *v.* ELIZA JANE ADAMS and Others, as Executors, etc., of HENRY ADAMS, Deceased, Respondents.

*Compromise agreement between a debtor and his creditors — not vitiated by acts of a third person — when it may, by reason of preference to one, be repudiated by the other creditors — estoppel by accepting benefits under a contract.*

If a debtor executes a compromise agreement with his creditors in good faith, and faithfully and honestly carries out its terms, he cannot be deprived of such benefits as may have accrued from such agreement and his subsequent labor in furtherance of it, because of the act of a third party, done without his consent and without his knowledge.

When an insolvent debtor, endeavoring to make a compromise agreement with his creditors, for the purpose of inducing one of his creditors to join in such compromise agreement, secretly and without the knowledge of his other creditors, offers an extra inducement to such creditor to accept such compromise agreement, the compromise agreement thereafter made may be repudiated by any of his other creditors upon their becoming cognizant of such fact, although in fact the creditor to whom such offer was made never derives any benefit therefrom.

One who takes a benefit under a contract after knowledge of the fraud which vitiates it, is not thereafter entitled to have the contract adjudged fraudulent.

APPEAL by the plaintiffs, Louis F. Martin and others, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 25th day of June, 1892, upon the report of a referee.

*M. N. Regensburger*, for the appellants.

*Hugh Porter*, for the respondents.

PARKER, J. :

On a former review in April, 1891, this court reversed a judgment in favor of the defendants, on the ground that one of the creditors uniting in the compromise agreement had a secret contract by which it acquired further advantages than those obtained by the rest of the unsecured creditors.

The retrial resulted, as did the first one, in a judgment in favor of the defendants, and the appellants insist that such a result could only have been reached by disregarding the prior decision of this court.

On the 9th day of August, 1882, the firm of R. & H. Adams made a general assignment for the benefit of their creditors. Thereafter a compromise agreement was entered into, by which these plaintiffs and the other creditors agreed to accept and receive in satisfaction of the debts owing them, fifty-five per cent, in the notes of their debtors indorsed by Robert Adams, and further secured by mortgage upon certain property situated at Paterson, N. J., the notes being payable in five equal annual installments with interest. There was a further agreement that Henry Adams should pay to each of the creditors, at the expiration of one year after the payment of the notes, his share of the net profits or earnings of the business of any firm of which he should thereafter become a member, but not exceeding ten per cent of the principal of the respective claims of the creditors, and interest on the ten per cent, at the rate of six per cent from the date of the mortgage given to secure the fifty-five per cent and interest. While effort was being made to induce all of the creditors of the insolvent firm to become parties to the compromise agreement, Wm. Adams, a son of Henry Adams, one of the assignors, without the knowledge of the other creditors, made a further agreement with the Second National Bank of Fall River, by which he agreed to purchase the interest of the bank in the ten per cent which the debtor Henry Adams promised to pay only on condition that a profit should result to himself individually or as a member of such firm.

In payment for this interest he agreed to give his notes for a sum.

equal to ten per cent of the bank's claim. While the notes which were given by Wm. Adams in pursuance of his contract were never paid, and it does not appear that he was solvent when they were given, still the conclusion was reached, as we still think rightly, that if the notes were accepted in preference to the contingent offer of the debtors, the element of advantage to one or more creditors as against the others (essential to the making out of such a cause of action as the complaint alleges) was present. It was still necessary to entitle the plaintiffs to recover that it should in some way appear that the debtors, or one of them, were so connected with the transaction that they should be chargeable with the consequences of it.

That such was the fact this court deemed reasonably established by the evidence, and it referred to a memorandum signed " H. A." as a strong evidentiary fact tending to establish that such was the relation of the parties, the other person who signed his initials to the writing having testified that the initials " H. A." were subscribed to the writing by Henry Adams in the presence of the witness. The memorandum reads as follows:

*" April 17th*, 1883.

" Henry Adams says he will see that the notes given by William Adams in settlement of affairs of R. & H. Adams will be paid at maturity."

" H. A.                                                    C. E. O."

This writing, considered in connection with the other facts and circumstances proved, induced this court to hold that Henry Adams understood and participated in the attempt to persuade the Second National Bank of Fall River to sign the compromise agreement by giving to it something which it preferred to the possibility only, which the debtors offered beyond the fifty-five per cent.

The referee in his report, upon which the judgment under review is based, found that " No creditor received from said firm or said Henry Adams, on signing the said deed, or at any other time, any sum of money or any property or valuable thing, over and above the said sum of fifty-five per cent, as in said deed provided, and that the said Henry Adams or Peter Horne, or said old or new firm of R. & H. Adams, have not given or granted to the said creditors, or either of them, any preferences whatsoever, and that the amount of such payments was $497,000 of principal, and about $100,000 of interest."

After making this general finding, he passes upon the facts relating to the purchase of the contingent dividend.

He finds :

*First.* That Wm. Adams gave to the Second National Bank of Fall River his two certain promissory notes for $250, in pursuance of the agreement made in the month of April preceding.

*Second.* That " neither the said. agreement, nor the giving of said notes, nor the purchase of said dividend, was known to the said Henry Adams, Peter Horne or Robert Adams, and the payment of said notes was never guaranteed by said Henry Adams."

*Third.* That " the exhibit received in evidence and marked ' Exhibit B ' was originally dated in the year 1884, and was subsequently antedated 1883 ; the. words ' Wm. Adams, in settlement of the affairs of R. & H. Adams,' therein contained, were written over an erasure ; said paper had no consideration, was not subscribed by Henry Adams, and he had no knowledge of the existence thereof."

Thus we are confronted with findings asserting that the debtor Henry Adams was not a participant in the transaction relating to the purchase of the contingent dividend from the Second National Bank of Fall River by William Adams. And further that he had no knowledge whatever of the transaction. Even the memorandum which purports to guarantee the payment of the notes of William Adams, and which this court on the former review regarded as an important piece of testimony, is found not to be genuine.

The learned referee finds that this memorandum was not subscribed by Henry Adams, and that he had no knowledge of its existence. If these findings of fact have legal support in the evidence contained in the record, it is at once apparent that an entirely different situation is presented, for the findings, if properly made, command the judgment rendered.

If Henry Adams executed the compromise agreement in good faith, and faithfully and honestly carried out the terms, he cannot be deprived of such benefits as may have accrued from the agreement and his subsequent labor in furtherance of it, because of the act of another, done without his consent and without his knowledge.

The attempt to connect Henry Adams with the transaction between William and the bank was made through C. E. Orvis, who acted as agent for the bank in the transaction. He produced a pri-

vate memorandum book from which was taken the so-called guaranty of Henry Adams, which we have already quoted.

Orvis testified that the initials "H. A." were written by Henry Adams at the date which the memorandum bears.

On the part of the defense, Mr. Holmes, the cashier of the Second National Bank, testified in substance that the resolution of the directors authorized Orvis to settle on the terms proposed in the composition deed; that he was without authority to make any different arrangement; that the receipt of the Wm. Adams notes was never made the condition or prerequisite for the acceptance or signing of the compromise, nor was authority given Orvis at any time, or in any place, either verbally or in writing, to ask or receive any guaranty which would give the bank a preference over any other creditors. Upon being shown Exhibit B, which is the writing taken from the memorandum book of Orvis, the witness testified that the "bank" had no knowledge of such a paper and had never ratified it.

·An examiner of questioned handwriting was produced by defendants, and he testified that the letters "H. A" in Exhibit B, were not written by the person who wrote what was admitted to be Henry Adams' genuine signature. He further testified that the body of the memorandum had been altered by the erasure of that which had been originally written, and for it had been substituted the words "William Adams, in settlement of affairs of R. & H. Adams."

Henry Adams denied writing the letters "H. A."

Wm. Adams, Sr., and Wm. Adams, Jr., each testified that the initials "H. A." were not in the handwriting of Henry Adams. It is clear that the finding by the referee, that Henry Adams did not sign the memorandum, is so sustained as to deny to this court the right of reversal on the ground that it is against the weight of evidence. Without further discussing the evidence relating to the alleged connection of Henry Adams with the agreement of Wm. Adams to purchase the contingent dividend, it may be said that such findings in all material respects are as well sustained as the one asserting that Henry Adams did not sign the memorandum.

For still another reason the affirmance of the judgment is required.

The complaint is in equity; the prayer for relief asks that the composition deed be decreed utterly void and of no force or effect,

and that the defendants be forever enjoined from pleading or proving it in any suit or action at law. But the referee finds that " In or before the month of July, 1888, and before the last compromise notes were paid, the plaintiffs herein were informed of the alleged frauds committed in relation to said compromise, as set forth in said complaint, and with such knowledge the plaintiffs, and each of them, received and accepted the money due on said notes, which became due in August, 1888, without protest or objection." And that "After the payment of said last-mentioned compromise notes, and before the commencement of this action, the said plaintiffs did not, nor did either of them, obtain or acquire any additional information in relation to said alleged frauds."

Thus it appears that with full knowledge of all the facts which the plaintiffs have proved, they proceeded in affirmance of the contract.

They retained in their possession the notes not yet matured. At maturity they accepted the payment of them and surrendered the notes. Immediately thereafter this suit was commenced, but too late, for the rule is well settled that one who takes a benefit under a contract after knowledge of the fraud which vitiates it, is not thereafter entitled to have the contract adjudged fraudulent.

The acceptance of benefits under such a contract, with knowledge of the wrong which discredits it, operates as a ratification. (*Cobb v. Hatfield*, 46 N. Y. 533.)

The judgment should be affirmed, with costs.

VAN BRUNT, P. J., and BARRETT, J., concurred.

Judgment affirmed, with costs.